1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
    Criminal Action No. 12-CR-00140-CMA-1
 3
    UNITED STATES OF AMERICA,
 4
         Plaintiff,
 5
    vs.
 6
    MICHAEL DESTRY WILLIAMS,
 7
         Defendant.
 8  _____

 9                      REPORTER'S TRANSCRIPT
                         Status Conference
10  _____

11       Proceedings before the HONORABLE CHRISTINE M.

12  ARGUELLO, Judge, United States District Court for the District

13  of Colorado, commencing at 1:36 p.m., on the 22nd day of

14  August, 2013, in Courtroom A602, United States Courthouse,

15  Denver, Colorado.

16                           APPEARANCES

17        Kenneth Mark Harmon, U.S. Attorney's Office,

18  1225 17th Street East, Suite 700, Denver, CO 80202, appearing

19  for the plaintiff.

20        Martha Horwitz Eskesen of Martha H. Eskesen, P.C.,

21  5445 DTC Parkway, Penthouse 4, Greenwood Village, CO 80111,

22  appearing for the defendant.

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
     Produced via Computer by Janet M. Coppock, 901 19th Street,
25        Room A257, Denver, Colorado, 80294, (303) 893-2835
```

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | *THE COURT:* Court calls Criminal Action |
| 3 | No. 12-CR-00140-CMA encaptioned United States of America v. |
| 4 | Michael Destry Williams. |
| 5 | Counsel, would you enter your appearances, and then I |
| 6 | will have Mr. Williams enter his appearance. |
| 7 | *THE DEFENDANT:* Please, before you get started, this |
| 8 | woman is not counsel. Just as I fired all of you, she has not |
| 9 | been hired for the record. Affidavit put into the public who |
| 10 | is your -- would you like this, sir? |
| 11 | She has never been hired. She is not counsel. |
| 12 | *THE COURT:* All right. Counsel, would you enter your |
| 13 | appearances. |
| 14 | *MR. HARMON:* Good afternoon, Your Honor. Kenneth |
| 15 | Harmon on behalf of the United States. |
| 16 | *THE COURT:* Good afternoon. |
| 17 | *MS. ESKESEN:* Good afternoon, Martha Eskesen. |
| 18 | *THE DEFENDANT:* Excuse me, excuse me, excuse me. You |
| 19 | are fired. |
| 20 | *THE COURT:* Mr. Williams, this is my court. Would you |
| 21 | remove Mr. Williams from the courtroom. You can listen in the |
| 22 | other room. You are not going to be disrespectful to anyone in |
| 23 | my courtroom. |
| 24 | *THE DEFENDANT:* $1 million assessed against your |
| 25 | personal liability from -- |

1    *THE COURT:*  The record will reflect that the defendant
2  has been removed from the courtroom because of his disruptive
3  behavior.
4         Ms. Eskensen, you may proceed.
5         *MS. ESKESEN:*  Thank you, Your Honor.  Martha Eskensen
6  appearing as standby advisory counsel to Mr. Williams.  For the
7  record, I will let the Court know that when Mr. Williams was
8  brought in today, he indicated that I was not to sit at this
9  table and I indicated that I would do what is required of me by
10 the Court.
11        I will let the Court know that he since the last court
12 appearance has apparently decided that I am not to assist him.
13 He does not want my services.  That was communicated to me by
14 the counselor at GEO Aurora Detention Center.
15        *THE COURT:*  Thank you.
16        I held this status conference because I was concerned
17 with his total refusal to accept anything from anybody in this
18 case, including any filings.  And as a result of that, I am
19 concerned of his competency, so I did order a competency
20 evaluation.
21        I am going to clarify because oftentimes we tend to
22 use the term advisory and standby synonymously and they are
23 very different terms.  Standby counsel is someone that I would
24 look to to step in to represent the defendant should the need
25 arise.  Advisory counsel is someone who is appointed to assist

 1  in legal matters that the defendant, because he is

 2  incarcerated, may need or to assist the Court in this

 3  particular case with respect to locating a psychiatrist or

 4  other doctor or psychologist that could assist in conducting

 5  the competency evaluation.

 6          Also, I think in a case like this where I have ordered

 7  the competency evaluation because we don't know if he is

 8  competent, I need to have somebody appointed who will represent

 9  his interests whether he wants it or not.  So I am going to

10  clarify, and if you have any questions, Ms. Eskensen, to

11  further flesh out things, I will allow you to do that.

12          I am appointing you as advisory counsel, not as

13  standby counsel.  So your role in this case is to -- and I

14  don't know if there is a different term it's called, but to

15  represent Mr. Williams' interests in the competency evaluation

16  to the extent that you think his interests need to be

17  represented.

18          Since he has already indicated he has no interest in

19  having you do anything or be associated with him, I am going to

20  relieve your duties to have to do anything other than represent

21  his interests in the competency hearing, but I would appreciate

22  it if you could work with the Court to locate -- because I

23  don't want him shuffled here and there and have a real delay in

24  time.  I would like to go ahead and get this case moving

25  forward, so -- and I don't want to lose a bunch of time having

1   him shipped off somewhere and there is delay, so I would prefer
2   to have a local doctor or psychologist take a look at him.
3   　　　　So that's what I am charging you with here is to help
4   that happen so that we can proceed as expeditiously as possible
5   because he is being held and detained.  And I think we just
6   need to find out whether he is going to be convicted or not
7   and, if so, we can deal with that, but I just don't want to
8   have undue delay.
9   　　　　Do you have any additional questions with respect to
10  the extent of your appointment?
11  　　　　*MS. ESKESEN:*  I do not, Your Honor.
12  　　　　And knowing that these are issues that the Court was
13  going to address today, I spoke briefly with Mr. Harmon when
14  the Court first entered its order and have also done some
15  checking around as far as keeping Mr. Williams here.
16  　　　　I can tell the Court just based on what I have
17  observed thus far whether he gets shipped off somewhere or
18  whether he stays here in the local area, I seriously doubt that
19  he is going to be willing to speak to anyone.  And I think that
20  the issue that we are going to be addressing next is how do we
21  determine competency with a defendant that does not wish to
22  participate in the whole process.
23  　　　　As far as our options for having an evaluation done
24  here, I think the Court has two.  One is to request that he be
25  evaluated within the Bureau of Prisons at the Federal

1  Correctional Institution at Englewood.  There is a psychologist
2  there.  He is not a licensed psychiatrist.  He is a
3  psychologist.  And I know that there have been other defendants
4  that have been evaluated by him locally and have not had to
5  leave this jurisdiction.
6       *THE COURT:*  Now, have they been pretrial detainees?
7       *MS. ESKESEN:*  They have been pretrial detainees, yes.
8  And the other option that the Court has, obviously, is to
9  appoint independently a local area psychiatrist that would be
10 charged with going out to whatever facility he is at and
11 evaluating him there.
12      *THE COURT:*  I think I would prefer a local area
13 psychiatrist or psychologist mainly because if he is not going
14 to cooperate, then I think that family members need to be
15 talked to.  And for the record, I would note that I did receive
16 a note from Esther J. Williams, who is apparently the mother.
17      *MS. ESKESEN:*  Yes.  And she is in court today, Your
18 Honor, and she is the lady back here to your left.  I have
19 spoken at length with her.  Obviously, she is very concerned
20 about what is happening and can shed some light on some of the
21 history.
22      I know that I have been asked at least by Mr. Harmon
23 about my opinions of Mr. Williams and his competency.
24 Obviously, I am a lawyer and I am not a mental health
25 professional and certainly not a doctor in medicine, so I am

1   not qualified in that area, but my assessment of him just based
2   on the very limited contact I have had with him is that he is
3   perfectly competent.
4              This is an individual who has -- if you will, he is
5   dancing to his own tune.  He has his beliefs.  Whether or not
6   those beliefs render him competent -- incompetent I have
7   serious doubts about, but again, I am not a mental health
8   professional.
9              I think in terms of local area doctors, I have also
10  given some names to AUSA Harmon and suggested that if I need to
11  find out further information, I will.  I know I have used and
12  this Court has used in previous cases Dr. Karen Fukutaki, who
13  is with Denver Health.  And I did speak with her within the
14  past few weeks just to check out her availability because she
15  often has quite a busy schedule, and she indicated that she
16  would be available.  So I am throwing that out there for the
17  Court as well.
18             *THE COURT:*  Is there any objection?
19             *MR. HARMON:*  Judge, if I may have a chance just to
20  address a couple of the issues.  The government does have some
21  positions on this.
22             I did talk to Ms. Eskensen and I actually did vet
23  these issues internally in my office.  And this is something
24  that has been coming up more regularly, and so it's something
25  we are trying to develop a position on.

1      I think the Court just needs to know the other
2 considerations besides the ones I that think the Court noted
3 and I think are valid positions, which is if the defendant
4 cannot be spoken to, then the mental health professional does
5 need to talk to family members. That, therefore, makes some
6 sense to have somebody local. I got that.
7      I do just want to go back one moment, if I could, to
8 the issue of Ms. Eskensen's role as advisory versus standby. I
9 perfectly understand advisory and the limited aspect in which
10 she would be advisory at this point. I do want to raise this
11 with the Court, however.
12      I think the Court should consider whether she should
13 be appointed as standby counsel as well, and here is why:
14 Because if we get into the trial process and if the defendant
15 behaves in a way similar to the way he behaves now, this Court
16 may come to the view that he has disenfranchised himself of the
17 right of self-representation and that right has limits. I
18 mean, if you can't abide by court protocol, for example, you
19 don't have that right to be -- to represent yourself.
20      So if we are in the middle of a trial setting, which
21 appears very likely at this point, and the defendant does
22 behave in that way, and the Court finds that he has lost that
23 right to be pro se, if somebody is not there to take on the
24 representation and continue with the trial, the Court's only
25 other option is really to declare a mistrial and to relieve

1   jurors who will be impaneled if we get that far.

2   *THE COURT:* Or to just proceed with the trial. He
3   makes the decision. I had this happen in another case.
4   Defendant refused to have -- I had standby counsel. It's a
5   tremendous expense and we just don't have the money to do that
6   anymore. And I had standby counsel who sat at that back table
7   because, like Mr. Williams, defendant refused to have him sit
8   at the table. And that's his right. He has a right not to
9   have a lawyer there. I had to exclude him from the trial. And
10  he refused to have standby counsel come in, so I never
11  appointed him.

12  *MR. HARMON:* I just want to remind the Court, and the
13  Court knows this already, the Court can find at some point that
14  he has lost that right to counsel and the Court could find,
15  although it doesn't have to -- it's all fact dependent and
16  circumstance dependent -- that for there to be a fair trial,
17  notwithstanding his wishes it should appoint someone to
18  represent him. There is case law to support that.

19  If the Court gets to that position and you don't have
20  somebody who has read the discovery and ready to take over the
21  case as standby counsel, then you are really in a mistrial
22  status.

23  *THE COURT:* That was one of the issues -- I am not
24  really familiar with the intricacies of this, but that was one
25  of the ways in which the 10th Circuit distinguished is that he

1  voluntarily excused himself from the trial.  He didn't want to
2  be here as opposed to me involuntarily excusing him from the
3  trial.  So I will give that some thought.
4         At this point, though, Ms. Eskensen is merely going to
5  be advisory counsel.  I will have to do more research on that,
6  and if you have any case law that you want me to take a look at
7  with respect to that -- the concern I have is it's clear that
8  Mr. Williams does not want anybody representing him.  And it's
9  likely he is not going to be able to behave himself based on
10 what we have seen in the last few hearings, and I may have to
11 exclude him.
12        And then the question becomes how likely is it that
13 the Court is going to force someone to step in because it is a
14 very costly -- especially when they are refusing to cooperate
15 with counsel.  It puts counsel in a terrible predicament
16 because they don't have a client that will cooperate with them.
17        So I am kind of torn in terms of whether really it's
18 just a waste of money to do so, but I appreciate it.  I think
19 at this point, though, it's going to be advisory for the time
20 being.  It may turn into standby counsel as we proceed.
21        *MR. HARMON:*  Just to complete the record on this
22 issue, I will tell the Court that we have continued to send
23 discovery and pleadings to the defendant and they have
24 continued to come back to us.  The envelope is opened, but the
25 contents are delivered to us, so I cannot tell -- I can tell

1  the Court at this point that he has not taken any of our
2  discovery, that we have it back, so he has refused that
3  discovery.  I want to make sure that's clear for the record.
4              As to the issue of where the defendant will be
5  evaluated, I would also add in what he will be evaluated for.
6  I just wanted to add these things.  We have been focusing on
7  the mental competency issue and I understand that.  That's
8  something the Court raised *sua sponte*.  It's something I was
9  thinking about and not there yet in terms of making the motion,
10 but the Court saw the circumstances and decided to go ahead,
11 and I understand that.
12             There is a physical issue, and I want to make sure
13 that that doesn't get lost in the discussion about who the
14 right person is to evaluate him.
15             *THE COURT:*  That's the Mercury poison?
16             *MR. HARMON:*  That's the physical examination and he
17 may have some separate problems that just make it difficult for
18 him to be functioning on all four cylinders if he chooses to
19 engage the court.  So there needs to be an argument -- and we
20 made the motion and the Court granted the motion -- there needs
21 to be a doctor who can actually do some type of medical
22 evaluation on him.
23             *THE COURT:*  I think that should be done within the
24 system.
25             *MR. HARMON:*  And that's what I wanted to get to

1  because if we are talking about where he is going to be
2  examined, that's a factor to consider.  Mr. Gutierrez,
3  Guillermo Gutierrez, who is the case manager at GEO, told me,
4  and I think I put this in the supplement to our motion, the
5  defendant is not being cooperative in the GEO detention setting
6  with any type of medical examination.  And so I think that's a
7  factor for the Court to consider when it considers where the
8  physical examination that the Court orders should be conducted.
9          I think it needs to be conducted in a Bureau of
10 Prisons setting or -- well, at Englewood, basically.  That may
11 be the best place because it's local, but it's still within the
12 Bureau of Prisons context.  And there are doctors over there.
13 We don't have to hire outside doctors.  They are on staff.  I
14 will tell you as far as -- so that's where I am at on the
15 medical part of this.
16         I think he needs to be moved over to Bureau of Prisons
17 custody for that threshold medical examination.  I think that
18 needs to be done before we even get to -- well, it needs to be
19 done either before or parallel to the psychiatric or
20 psychological examination because if -- and I am not a medical
21 professional -- but if he does have Mercury poisoning and if it
22 does affect cognitive abilities, it's something that a
23 psychiatrist or psychologist is probably going to want to know
24 about before that person, that expert is required to submit a
25 report to you.

1         *THE COURT:*  I don't know how much success we are going
2    to have on either, so I think I just want them to proceed
3    concurrently as expeditiously as possible.
4         I am going to order that the physical examination,
5    physical/medical examination be conducted -- where is he being
6    held now?
7         *MR. HARMON:*  At a contract facility, GEO detention
8    facility in Aurora.
9         *THE COURT:*  Is it possible to have him moved to a BOP
10   facility?
11        *DEPUTY MARSHAL:*  I would have to talk with my
12   supervisor, Your Honor, but I am guessing it's possible.  Do
13   you need an answer right this second?
14        *THE COURT:*  No.  I am going essentially order that his
15   physical medical examination is to be conducted by someone
16   either in the Bureau of Prisons, if he can be moved there, and
17   that would be my directive, not an order, but just kind of a
18   suggestion that we see if we can get him moved over to the
19   Bureau of Prisons and that they conduct the physical
20   examination.
21        I am going to order that Dr. Karen Fukutaki be
22   appointed to conduct a medical competency evaluation for
23   purposes of determining whether he is competent to be tried or
24   competent to assist in his defense and all that the statute
25   requires, and those to proceed concurrently.

1        I also wanted to make sure that if the defendant
2   refuses to cooperate in the mental competency evaluation, that
3   Dr. Fukutaki then know that she should approach family members,
4   such as Mrs. Williams, to gain as much information as she can
5   and if there are others.  I am not sure what happens if he
6   refuses to take part in a physical medical examination.  I am
7   ordering it to be done.
8        *MR. HARMON:*  Judge, I do want to just state the
9   government's position.  I know the direction the Court is
10  going.  I respect that.  That's why he should be in a Bureau of
11  Prisons setting for the physical exam.  He is detained.  If he
12  has got a medical condition that physically can affect him and
13  can cause deterioration, they have an interest in making sure
14  they know about it.  So they have their means to get it done,
15  so I don't know if he has much of a choice in the physical
16  examination.
17       I am sure he could bring a tort suit at some point
18  down the line and argue about that.  I think at this point if
19  he is in their custody and he is claiming he is poisoned, the
20  Bureau of Prisons has the right to examine him to make sure
21  that they are not holding somebody there who maybe in a slow
22  way as opposed to a fast way is on the road to serious medical
23  problems.
24       The argument I was going to make was that if you are
25  going to have him in a Bureau of Prisons facility anyway, then

1    you may want to view this thing holistically; that is, the
2    physical aspect of this examination is an important factor in
3    the mental competency aspect, so you may want to have the staff
4    talking to one another, and that counsel is in favor of
5    actually having the defendant in a Bureau of Prisons setting
6    that's a medical facility.  That's the argument to make.
7            Now, the argument against it I got, I mean, it's
8    better to have him locally all things considered, there may be
9    some thought on the Court's mind that that's going to save the
10   government money if we do it locally.  I will tell you --
11           *THE COURT:*  No, I just think there is going to be no
12   cooperation, so they are going to have to end up talking to
13   family members.  That's really my concern here.
14           *MR. HARMON:*  I was going to tell you from the
15   Department of Justice's perspective, we don't necessarily save
16   money by doing that.  I want to make sure the Court was aware
17   of that.
18           *THE COURT:*  And money should be the last
19   consideration, actually.  We are talking about the defendant's
20   rights here.  My concern is based on all the experience, the
21   limited experience I have had with him, but reading the
22   transcripts of how far he has conducted himself before other
23   judges in this court and then the display that was here today,
24   he is not going to cooperate with anything.  And I think
25   therefore we are going to have to look to the family and others

1    who know him.

2         *MR. HARMON:* And not to try the Court's patience, but
3    the last issue, this now goes to what type of opinion you are
4    asking the psychiatrist to render.  It's obvious and it's
5    straightforward that the psychiatrist will take a look at the
6    *Dusky* mental competency standard and give an opinion.  And
7    that's set forth in the statute.  If you read the language, the
8    actual language of that standard, that's designed for a
9    represented defendant because it talks about assisting in his
10   defense.  The case law talks about consulting with counsel.

11        When you get into the area of a defendant who is
12   representing himself, there may be other issues of competency
13   that need to be addressed.  This was first I think expressly
14   kind of teed up as an issue in *Indiana v. Edwards*, which is
15   reported at 554 U.S. 164, a 2008 case, where the Court
16   acknowledged there is two areas of competency and two types of
17   determinations and they don't necessarily dovetail.

18        I will tell the Court there is a 10th Circuit case
19   that came shortly after that, a year after that, that said in
20   essence, well, we can use the same standards for both, but I
21   think there is some questions about that.  I will give the
22   Court that case as well.

23        *THE COURT:* Actually, what I am going to request is
24   that you prepare the proposed order to cover all of the areas
25   that you think so that we make it really clear to Dr. Fukutaki

1   what it is she needs to evaluate.

2   *MR. HARMON:* I will cut to the chase and I will tell
3   the Court what I am planning on doing. I had this come up with
4   a non-detained defendant who was representing himself where
5   court-appointed counsel asked for a competency evaluation. We
6   did an order and visiting Judge Vratil entered it.

7   It talked about evaluating him not just for the *Dusky*
8   standard, but whether he had the competency to waive his right
9   to counsel and the competency to conduct and engage in basic
10  skills, trial skills, that are kind of outlined in that Indiana
11  case. That order I believe was entered in Case No. 08-CR-263.
12  And frankly, that's the one I would prepare for the Court.

13  *THE COURT:* That would be great. I would appreciate
14  that. You have had experience on this. I have not yet.

15  *MR. HARMON:* I don't know if it's good experience.
16  That's all I have to say.

17  Thank you, Your Honor.

18  *THE COURT:* At that point we will make the decision as
19  to whether or not he is competent to waive his right to counsel
20  and whether I should have standby counsel. We will deal with
21  those issues as we get them, but I think we need to get these
22  two evaluations done first.

23  *MS. ESKESEN:* And, Your Honor, I think actually you
24  have had experience with this tangentially in the case with
25  Mr. Stanley. And what happened in that case was Mr. Stanley

1   was sent off for a competency evaluation after he had been
2   granted the right to represent himself, but at the same time --
3   and this was then before Chief Judge Babcock -- he appointed
4   counsel while the competency evaluation was occurring because I
5   know that in other cases other judicial officers have said,
6   well, we can't reach the question of a waiver, a knowing waiver
7   of the right to counsel without first evaluating whether the
8   defendant is competent to make that waiver.
9              *THE COURT:*  Right.
10             *MS. ESKESEN:*  In this case the Court has already done
11  that, obviously.  There are two options here.  The Court can
12  undo that or the Court can leave it as it is.
13             I will just simply for the record make it known that I
14  do not have any problems with Mr. Williams.  I know that he
15  does not wish to speak with me anymore and has expressed to the
16  Court that I am not his lawyer and he doesn't want me as his
17  lawyer.  I am not saying I am unwilling to do any of that.  I
18  am willing to be his lawyer and I will simply do as directed.
19             I know that also is one of his concerns because
20  obviously being an individual that does not recognize this
21  Court's authority, Your Honor's authority, this jurisdiction,
22  that's the starting point for him with all of this.
23             *MR. HARMON:*  Just as a clerical matter to follow up on
24  the proposed order, my proposal is to basically e-mail it
25  directly to the Court with a copy to Ms. --

1         *THE COURT:* Yes, to chambers with a copy and I will
2    review it and change it as I deem necessary, so just
3    arguello_chambers. I don't know what this affidavit is. It
4    was tendered to the Court, so I would say we probably ought to
5    just go ahead and have it docketed as a filing.
6         All right. Is there anything further?
7         *MR. HARMON:* No, thank you, Your Honor.
8         *MS. ESKESEN:* No, thank you, Your Honor.
9         *THE COURT:* The defendant is remanded. The Court is
10   in recess.
11      (Recess at 2:02 p.m.)
12                        REPORTER'S CERTIFICATE
13     I certify that the foregoing is a correct transcript from
14   the record of proceedings in the above-entitled matter. Dated
15   at Denver, Colorado, this 4th day of September, 2013.
16
17                                    S/Janet M. Coppock___