1

1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLORADO

3    Case No. 12-cr-00140-CMA

4    ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

5    UNITED STATES OF AMERICA,

6         Plaintiff,

7    vs.

8    MICHAEL DESTRY WILLIAMS,

9         Defendant.

10   ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

11           Proceedings before MICHAEL E. HEGARTY, United

12   States Magistrate Judge, United States District Court for

13   the District of Colorado, commencing at 2:16 p.m., July 2,

14   2013, in the United States Courthouse, Denver, Colorado.

15   ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

16           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18   ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

19                    APPEARANCES

20           KENNETH HARMON, Assistant United States Attorney,

21   appearing for the government.

22           ROBERT PEPIN, Assistant Federal Public Defender,

23   appearing for the defendant.

24   ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

25           ARRAIGNMENT/DISCOVERY/DETENTION HEARING

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO  80203
303-825-6119     FAX 303-893-8305

2

1                    P R O C E E D I N G S

2              (Whereupon, the within electronically recorded

3     proceedings are herein transcribed, pursuant to order of

4     counsel.)

5              THE COURT: Case No. 12-cr-140, United States of

6     America versus Michael Destry Williams.   Can I have

7     appearances, please.

8              MR. HARMON: Good afternoon, Your Honor.  Kenneth

9     Harmon on behalf of the United States.   Seated at

10    government's counsel table with me is Special Agent Trista

11    Mertz, IRS Criminal Investigation.

12             THE COURT: Thank you.

13             MR. PEPIN: Your Honor, I'm Robert Pepin.  I've

14    been appointed by the court but I'm moving to withdraw my

15    (inaudible - not at microphone) ask that I not represent

16    him.

17             THE COURT: Okay.  Are you free to -- okay.

18             All right, let me discuss that with you for a

19    second, Mr. Williams.  I've been here for seven-and-a-half

20    years, I know of no better criminal defense lawyer than

21    Robert Pepin.  You will not get a better lawyer.  We will

22    appoint somebody for you, even if you don't want a lawyer,

23    to monitor the case.  You are entitled to represent yourself

24    if you're competent, but the Court usually appoints an

25    attorney just to monitor things and step in as needed.

3

1          Do you really want Mr. Pepin to withdraw from the

2     case?

3               THE DEFENDANT: (No response from the defendant).

4               THE COURT: Well, I guess this is quite a change

5     from the last  hearing, so maybe this is even better.

6               THE DEFENDANT: If someone will address me in my

7     proper name, either as Beneficiary of the entity that you

8     just called, or as Michael Destry, I will respond.  But with

9     that said, in the last court and in this court I invoke

10    Article III common law and request that this be transferred

11    to a judge of the District of Colorado.  As you are a

12    magistrate of the petty offenses courts of the United

13    States, I do not give you permission to move forward unless

14    it's to take me to a judge under Article III.  If you

15    continue, I have a fee schedule for all public servants in

16    the public, and I will arrest your bonds.

17              THE COURT: You know, there's a chance that you'll

18    get out on bond today if you behave.  There's no chance --

19              THE DEFENDANT: You hear me, and I am not going to

20    say another word.

21              THE COURT: -- there's no chance that if you

22    misbehave you won't.  And if you do interrupt me and

23    continue to speak, I have the authority to have your mouth

24    bound by duct tape, and I will exercise that authority.

25              So I'll ask you again, Mr. Destry, Michael Destry,

1    do you --

2              THE DEFENDANT: Beneficiary.

3              THE COURT: Beneficiary.  Do you really want one of

4    the best lawyers I know to withdraw from your case?

5              THE DEFENDANT: I've already fired him, it has

6    nothing to do with you.

7              THE COURT: I didn't say it had anything to do with

8    me, I said do you want him off the case?

9              THE DEFENDANT: How many times do I have to say

10   that he is fired?

11             THE COURT: Okay.  Well, you only get one firing,

12   so this -- you're using up your chip right now.

13             THE DEFENDANT: Excuse me --

14             THE COURT: So, Mr. Pepin, I will grant your

15   motion.  However, Mr. Destry, Beneficiary, you have to have

16   a lawyer in order to proceed, so we're not going to be able

17   to proceed today.  We'll set this matter over for another

18   day and you'll spend some more time in that green jumpsuit,

19   so is that really what you want to do?

20             THE DEFENDANT: Since you've threatened me, this is

21   your second notice.  If you do this again, I will seize your

22   bond.  You have been noticed, Public Servant.

23             THE COURT: Okay.  So, Mr. Harmon, how much time

24   do you think we need to actually have another attorney

25   appointed and see if Mr. Destry, Beneficiary, can get along

1    with the next lawyer?

2              MR. HARMON: Well, Your Honor, I don't think we're

3    going to be able to do this tomorrow.  That's -- that's

4    carrying it over to Friday.

5              THE COURT: Right.

6              MR. HARMON: The IRS is actually closed on Friday.

7              THE COURT: Okay.

8              MR. HARMON: Although, the agent who would be my

9    witness can come in.  I don't know if we actually need to do

10   evidentiary proceedings in respect to a detention hearing on

11   Friday.  I think the threshold issue is this, which is what

12   Judge Tafoya was trying to get at during the initial

13   appearance and advisement, she made a finding at the time,

14   which was the triggering timing for the appointment of Mr.

15   Pepin, that Mr. Williams, Michael Destry Williams, was not

16   competent to represent himself.  It was based on the nature

17   of the proceeding at the time.  Mr. Williams was not

18   behaving in court and not letting Judge Tafoya get a word in

19   edgewise, so I think the initial proceeding has to be

20   whether the defendant is competent to represent himself or

21   whether he should have a lawyer regardless of his --

22             THE COURT: Well, was he competent -- do you

23   believe there's an issue as to whether he's competent to

24   assist in his defense?  If so, then there's procedures we

25   need to engage in.

1         MR. HARMON: I don't know.  I think what needs to

2    be done is an attorney needs to be appointed and just talk

3    to him, and he can make that call.

4         THE COURT: Well, we did that once.

5         MR. HARMON: Well --

6         THE COURT: Mr. Pepin --

7         MR. HARMON: There's two -- I would say this,

8    there's two competencies, Your Honor.  There's the

9    competency to assist in the representation --

10        THE COURT: Right.

11        MR. HARMON: -- which is one, and then there's the

12   other competency, which is to be a pro se litigant.  They're

13   related but they're separate.

14        THE COURT: Okay.

15        MR. HARMON: The one I'm talking about right now

16   that I thought Judge Tafoya was seizing upon in appointing

17   Mr. Pepin was the competency to comport oneself in court and

18   be one's own advocate and, therefore, represent oneself pro

19   se.

20        THE COURT: And where are the standards for that

21   level of potency identified?  Are they in the file?

22        MR. HARMON: There -- there's Supreme Court cases

23   on that.  I can -- I can -- I had that come up in one of my

24   cases.

25        THE COURT: So it's just case law, it's not

1    codified anywhere.

2              MR. HARMON: No.

3              THE COURT: Okay.  Do you have the case law with
4    you?

5              MR. HARMON: Not -- not with me.

6              THE COURT: Do you know enough about it to make a
7    representation?

8              MR. HARMON: I know that we litigated this in
9    United States versus Wilson, which is a case that was
10   assigned to Judge Vratil, 08-cr-263 is the case.

11             THE COURT: Okay.  And just generally, what is the
12   standard?

13             MR. HARMON: I'd be misleading the Court if I tried
14   to recall it off the top of my head.

15             THE COURT: All right.

16             MR. HARMON: But it does -- it does -- one of the
17   components was whether the defendant can comport himself in
18   court and abide by the rules.

19             THE COURT: Well, he's abiding by the rules right
20   now, so --

21             MR. HARMON: I'm at your pleasure, Judge.  If you
22   want to try to appoint another attorney and have a go at it
23   at Friday, we'll be happy to --

24             THE COURT: Well, I think we have to give it one
25   try at least, because, in my experience, you do get one

1    chance to ask a competent lawyer to get off your case and we

2    don't really question that too much, but if there's two,

3    then that's a problem.

4              MR. HARMON: I just -- not to wear the Court's

5    patience thin, I -- the sense I got from Mr. Michael Destry

6    Williams when there was actually a dialogue in court last

7    week was that he doesn't want another lawyer, he wants no

8    lawyer, and he wants the right to represent himself. We did

9    not have the ability to conduct a Faretta inquiry, which is

10   what would be required. And so that's the threshold issue,

11   is whether Mr. Destry Williams is asking for another lawyer

12   or he wants to represent himself. If he wants to represent

13   himself, you go one way. If he doesn't want to represent

14   himself, then we see how things fare with the second lawyer.

15             THE COURT: Okay. Mr. Destry, Beneficiary, are you

16   willing to tell me whether you want to represent yourself or

17   whether you'd like an attorney?

18             THE DEFENDANT: I've already represented myself,

19   and may I make a notice to the Court?

20             THE COURT: Sure.

21             THE DEFENDANT: I already have a judgment against

22   the IRS in this matter, it was handled ten years ago by

23   federal attorneys out of Washington and it's publically

24   noticed.

25             THE COURT: You may have defenses to the case, it's

9

1    just that we can't really find out what your defenses are if

2    you don't cooperate.

3              THE DEFENDANT: And --

4              THE COURT: You may be able to get out of the case,

5    the United States may drop all charges, it's happened

6    before, but we're not going to be able to get to the merits

7    if you don't cooperate, and you may spend months and months

8    in jail just because you proceeded like you want to instead

9    of what a very learned and educated and experienced attorney

10   told you to.

11             So it's my advice to you that you listen to your

12   attorney, have him carry the water in the case, present your

13   defense and see what happens.  When you try to do it

14   yourself, it just usually goes bad, that's your call.  So I

15   know you've already represented yourself, but my question to

16   you is:  In this criminal proceeding, in this Indictment

17   that's been issued by a grand jury in this district, do you

18   want to be your own attorney, or do you want me to appoint

19   an attorney for you?

20             THE DEFENDANT: My only request here is for an

21   Article III court judge to be arraigned properly.  Until

22   that happens, you do not have my permission, and if you

23   continue, sir, I'll have no options but to seize your bond.

24             THE COURT: I don't know what -- I don't have a

25   bond.  I wish I had a bond.  I mean, I'd better off with a

1    bond.  I don't have a bond.

2           And you will see -- the next person you'll see is

3    an  Article  III  judge  named  Christine  Arguello.   The

4    procedures  we  have  set  up,  laws  passed  by  Congress,

5    authorize  magistrate  judges  to  conduct  very  initial

6    proceedings  in  a  case  like  this.   We  --  we  don't  have  much

7    authority,  so  in  anything  we  do  you  can  appeal  to  your

8    Article III judge.  I can be reversed like that.  So that

9    doesn't bother me --

10          THE DEFENDANT: Can I make this --

11          THE COURT: -- it is what it is.  But I need to

12   know  whether  you  want  to  have  an  attorney  or  represent

13   yourself.

14          THE  DEFENDANT:  Like  I  said,  the  only  thing  I'm

15   requesting here is invoking Article III common law.  You do

16   not understand, Public Servant, you're violating your oath

17   of office, I am going to arrest your bond.

18          THE COURT: But I need to know whether you want an

19   attorney or you don't.

20          THE DEFENDANT: I've already made that assumption.

21          THE COURT: Well, and disclose it to me again.

22          THE DEFENDANT: All public officials are fired.

23          THE COURT: Well, but we have private attorneys who

24   can come in and represent you, they're not public officials

25   at all.  They're out there making all kinds of money, and

1    they're very good, too.  Would you like one of those kind of

2    guys who's not employed by the United States government in

3    any way whatsoever?

4              THE DEFENDANT:  I will answer that at a proper

5    arraignment in front of an Article III court judge.

6              THE COURT:  Okay.  I think he might be satisfied

7    with appointment of a for-profit attorney, so we'll -- I'll

8    appoint a member of --

9              THE DEFENDANT:  Do not speak for me, sir.

10             THE COURT:  -- I'll appoint a member of the CJA

11   panel to represent him, and we'll have a hearing on Monday,

12   since --

13             MR. HARMON:  Judge, do you want to have a detention

14   hearing --

15             THE COURT:  Well, actually --

16             MR. HARMON:  -- or do you want to have a status

17   hearing to figure out if the case is going to go forward

18   with that --

19             THE COURT:  Well, we'll set it for a status

20   hearing.

21             Can we do -- if a CJA attorney is appointed, can

22   we do it on Friday since that doesn't involve the PD's

23   Office?

24             MR. HARMON:  I have -- I can be here.

25             THE COURT:  Are we allowed to do it if it doesn't

1    involve the public defender?

2              UNIDENTIFIED SPEAKER: I'm not sure about the

3    Marshal Service, Your Honor.

4              THE COURT: Okay.  Anybody know from the Marshal

5    Service?

6              UNIDENTIFIED SPEAKER: We can do it, Your Honor,

7    (inaudible - not at microphone).

8              THE COURT: Well, I don't want to get in trouble

9    with the bosses of the building, so I'm not sure whether

10   there's a blanket prohibition.  There's not a blanket

11   prohibition because we can do initial appearances on

12   Fridays, I think.  Can't we do initial appearances?

13             UNIDENTIFIED SPEAKER: (Inaudible - not at

14   microphone).

15             THE COURT: So it seems to me we should be able to

16   do a hearing involving a CJA lawyer.

17             Mr. Pepin, do you think we can do that, based on

18   your understanding of what we're doing here in the court

19   nowadays?

20             MR. PEPIN: All I know is that I can't.

21             THE COURT: Right.

22             MR. PEPIN: (Inaudible - not at microphone).

23             THE COURT: Right.  Well, you're off the case

24   anyway.

25             MR. PEPIN: No, I mean I just (inaudible - not at

1   microphone).

2        THE COURT: Okay.  Okay.  Well, let's set it for

3   Friday.  Are you available Friday?

4        MR. HARMON: I'll be here Friday.  Your Honor, I

5   guess I'm prepared to have a witness here Friday as well.

6   There is an issue about how long the detention can be

7   continued.   We continue the three days based on the

8   government's automatic right to a three-day continuance.

9        THE COURT: Well, I think it can go five, total.

10        MR. HARMON: That's right.

11        THE COURT: And --

12        MR. HARMON: Without good cause, without finding

13   good cause.

14        THE COURT: And that would be the fifth business

15   day, right?

16        MR. HARMON: That's right.

17        THE COURT: So what do you think we need to do then

18   on Friday?

19        MR. HARMON: I think we need to start off with the

20   issue of counsel and work our way from there.

21        THE COURT: Okay.  And so what if -- so if Mr.

22   Destry, Beneficiary, somehow sees the light and agrees to

23   the attorney I appoint him, we can go forward simply with an

24   arraignment, discovery and detention, and it goes forward

25   like a normal case.  And we can even consider, Mr. Destry,

1    Beneficiary, letting you out on bond.   However, if you

2    persist in completely disrespecting the institutions that

3    this country has set up for the administration of justice,

4    you will establish beyond doubt that you're incapable of

5    following any court order, and therefore, I guarantee you,

6    you'll be detained pending your trial, which in a case like

7    this, Mr. Harmon, can be how long?

8            MR. HARMON: Well, it could be declared complex and

9    it can go two years before we --

10           THE COURT: Two years?

11           MR. HARMON: Yeah.

12           THE COURT: Before you ever have a finding of guilt

13   or innocence.   You can be held in detention for two years

14   because you proved yourself to be a danger to the community,

15   so that's going to be your call.

16           All right.   So what if he really doesn't answer,

17   then, any questions regarding whether he wants an attorney

18   or not, what would we proceed to?

19           MR. HARMON: I think the Court would then need to

20   address whether he's competent to represent himself, and/or

21   whether the defendant's Sixth Amendment right to persist in

22   representing himself can be -- can give way to the other

23   considerations that he would have.   I can research it and

24   I'll be prepared to discuss that on Friday, but I know that

25   the right to self-representation is not absolute and there

1    are circumstances where that has to yield.

2              I will just say on the two years' thing, Your

3    Honor, two years if there are continuances and exclusions of

4    time from the Speedy Trial Act, but typically that's what is

5    asked for by the parties, and up to two years can be the

6    normal amount of time.  I don't want to mislead the Court.

7              THE COURT: Understood.

8              MR. HARMON: The defendant has a right to 90 days

9    under the Speedy Trial Act without exclusions.

10             THE COURT: Okay.  Well, I'll be prepared to engage

11   in the colloquy necessary to establish whether he's

12   competent to represent himself, okay?

13             MR. HARMON: Okay.

14             THE COURT: And I've also sent people off for

15   mental evaluations on several occasions, so I know how to do

16   that, which is about a four-month process, sitting in either

17   Springfield, Missouri, or Rochester, Minnesota, or Butner,

18   North Carolina.  So --

19             MR. HARMON: I will tell the Court that under Case

20   No. 08-cr-263, the court-appointed lawyer, Mr. Peters, made

21   a motion to ask that his client be evaluated for competency

22   because of the types of pro se filings he was making without

23   authorization --

24             THE COURT: Well, that's where --

25             MR. HARMON: -- and then we did get into a

1    discussion about all of the issues that I think would be

2    pertinent here.  I'll go back and look at that case, but

3    there were filings in that case that addressed this issue.

4                THE COURT: Okay.  Well, that's where the request

5    usually comes from.

6                All right, then that will be the order of the

7    Court.  What time on Friday?

8                THE CLERK: 10 o'clock.

9                THE COURT: 10 o'clock.  Okay.  So the CJA panel

10   will be represented, hopefully we'll be able to proceed.

11               MR. HARMON: May I make a suggestion that unless

12   there's an inconvenience, it be done in the afternoon.  That

13   way the CJA counsel will have the most amount of time to

14   become familiar with the case.

15               THE COURT: Okay.

16               THE CLERK: We can do it at 1:30.

17               THE COURT: 1:30.

18               MR. HARMON: Thank you.

19               THE COURT: Okay.  And be prepared with whatever

20   evidence you need on detention, too.

21               MR. HARMON: We're ready to go.

22               THE COURT: But I -- I mean, I honestly -- I will

23   consider a bond for this man if he has respect for the

24   Court, okay?

25               MR. HARMON: We'll have something to say about

1     that, Your Honor.  There are multiple failures to appear and

2     arrest warrants out for the defendant.

3               THE COURT: I understand, but I'll give him a

4     chance to prove that he should be released on bond.

5               All right.  Then --

6               THE DEFENDANT: I need to make a statement, sir.

7               THE COURT: Pardon?

8               THE DEFENDANT: I need to make a statement.

9               THE COURT: Well, you don't -- you have the right

10    to remain silent.

11              THE DEFENDANT: I just need to make a statement

12    right now.

13              THE COURT: I know, but let me advise you of your

14    right to remain silent, first, because even when you make

15    statements, if you don't think you're doing anything

16    incriminating, you might be.  So you have a right to remain

17    silent, but I'm not going to prohibit you from speaking.  Do

18    you want to still make a statement?

19              THE DEFENDANT: I would like to make a notice, yes.

20              THE COURT: Go ahead.

21              THE DEFENDANT: Since you've continued past your

22    warning, Public Servant Magistrate, I do accept your

23    dishonor of your oath, and I hereby assess, per my fee

24    schedule in the public, one million silver species.  Your

25    bond has now been arrested, would you like to settle your

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO  80203
303-825-6119      FAX 303-893-8305

18

1    debt?

2            THE COURT: You're making things easier on me by

3    your statement, so --

4            THE DEFENDANT: I'll take that as a no.

5            THE COURT: -- this case is in recess.

6            THE CLERK: All rise.  Court is in recess.

7

8            (Whereupon, the within hearing was then in

9    conclusion at 2:33 p.m. on July 2, 2013.)

10

11           I certify that the foregoing is a correct

12   transcript, to the best of my knowledge and belief, from the

13   record of proceedings in the above-entitled matter.

14

15       /s/ Bonnie Nikolas              September 9, 2013

16       Signature of Transcriber              Date

17

18

19

20

21

22

23

24

25

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO  80203
303-825-6119      FAX 303-893-8305