**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 12-CR-00140-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL DESTRY WILLIAMS,

    Defendant.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER

---

The United States of America (the "Government"), by and through Jason R. Dunn, United States Attorney for the District of Colorado, and Andrea Surratt, Assistant United States Attorney, hereby submits its response to defendant Michael Destry Williams' Motion For Revocation of the Detention Order (the "Motion"). [Doc. No. 149]

In his Motion, the defendant (through his counsel, Kelly Meilstrup, with whom he refuses to communicate)[1] requests that the district court review the magistrate judge's

---

[1] On April 6, 2020, an individual named Jim Williams—who says he is the defendant's brother—emailed counsel for the Government, counsel for the defendant, and the Court stating that the defendant "WILL NOT accept 'representation' from ANY BAR member, and any attempt by any one of you involved in this action to try to represent him or assign representation to him WITHOUT his wet ink signature on a contract of representation is fraud." Mr. Williams also threatened that "This is now warning and Notice to all involved in this unlawful detention of American National Michael Destry: Williams,, if he contracts this Coronavirus while in the custody of the Marshal's Service while under orders from you or any one else involved in this case and does not recover from it, each and every one of you separately will be sued for wrongful death, but not limited to!" Mr. Williams attached various documents to his email.
    On April 9, 2020, counsel for the defendant filed the instant Motion. Though the defendant claims, through Mr. Williams, that he does not wish to be represented by counsel, Ms. Meilstrup was appointed pursuant to the Criminal Justice Act and has not been relieved. However, as Ms. Meilstrup stated in the Motion, it appears that neither the defendant nor his family has been willing to communicate with Ms. Meilstrup about the subject of the Motion or anything else. Although it is not unreasonable to assume that the defendant would not mind being released from custody, none of the representations in the Motion—regarding the defendant's health or otherwise—have been confirmed by the defendant or his family.

1

detention determination pursuant to 18 U.S.C. § 3145, and release the defendant to home detention due to the global COVID-19 pandemic.  The original order of detention in this matter, however, was on October 21, 2019—nearly six months ago.  [Doc. No. 131]. Given the length of time between the original detention order and this "appeal," the fact that the motion purports to rely on new developments since the original order of detention, and Judge Arguello's referral of the Motion to the magistrate judge [Doc. No. 150], the defendant's Motion is more appropriately treated as a motion to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f)(2).

The defendant's request is based on the speculative prospect of a widespread COVID-19 outbreak at the facility where he is being detained pending his supervised release hearing.  The defendant is being held at the GEO Detention Center in Aurora, CO ("GEO"), however, where not a single inmate has tested positive for the virus.  Further, the Motion identifies no health issues particular to the defendant that would make him more susceptible to contracting COVID-19 if such an outbreak were to occur.  In any event, the Motion fails to identify a change in circumstance impacting the factors the Court must consider under the Bail Reform Act.  Finally, the defendant remains a risk of flight and danger to the community, as he did when initially detained in October 2019.

Accordingly, the Government respectfully requests that the Court deny the defendant's Motion.

## **BACKGROUND**

On November 5, 2013, following a six-day jury trial, the defendant, who appeared *pro se* and was disruptive throughout, was found guilty of ten counts of tax and fraud offenses.  [Doc. No. 89].  On March 4, 2014, the defendant was sentenced to 71 months' imprisonment plus five years of supervised release.  [Doc. Nos. 106, 107].

Prior to his 2013 trial, on motion of the Government, the defendant was evaluated for physical and mental competency. [Doc. No. 31]. After reviewing a competency evaluation prepared by the appointed doctor, the district court determined that the defendant was mentally competent to proceed and did not suffer from any physical impairments—despite his insistence that he suffered from "mercury poisoning"—that rendered him incompetent. [Doc. No. 55]. The court noted that the defendant's "bizarre filings and refusal to accept mail" is the "result of his belief that he is not subject to the rule of law of the United States of America or to the authority of this Court. . . ." [Doc. No. 55].

The defendant began his term of supervised release on August 22, 2018. [Doc. No. 115]. On August 27, 2019, the Probation Department filed a petition alleging three violations of the defendant's supervised release:

1. Failure to report to the probation officer and submit written reports and directed;

2. Failure to pay restitution as directed; and

3. Failure to participate in mental health treatment as directed by the probation officer.

[Doc. No. 115]. At bottom, each of the violations stems from the defendant's belief as a sovereign citizen that he is not subject to the jurisdiction of the Court or the supervision of the Probation Department. It is not an exaggeration to say that he made himself unsupervisable during the time that he was on supervised release.

On August 30, 2019, the court issued a summons for the defendant's appearance on the supervised release violations. [Doc. No. 117]. Probation officers attempted to serve the summons on the defendant on September 6, 2019. [Doc. No. 120]. The defendant refused to accept the summons because it was not "issued in the correct court."

3

[Doc. No. 136]. He claimed—as he has throughout these proceedings—that he is not a U.S. citizen, but rather is an "American National," which gives him "a lifetime right to bear arms." [Doc. No. 136]. The defendant told probation officers that they were "trespassed" on his property and told them to leave. [Doc. No. 136]. He threatened the officers that, if they returned, he would see to it that they would be charged with treason and publicly hung. [Doc. No. 136]. As the officers were leaving, he threw the summons at them.

When the defendant did not appear on the summons, a warrant was issued for his arrest. [Doc. No. 121]. He was arrested on October 15, 2019, and appeared in court that same day. Contested preliminary and detention hearings were held on October 21, 2019 before Magistrate Judge S. Kato Crews; the Government presented evidence and called Probation Officer Travis Cormany to testify. The defendant did not present any evidence. Rather, despite being given many opportunities to speak on his own behalf, he refused to address anything relevant to the purpose of the hearings, electing instead to inform the court and the parties about his political beliefs and his displeasure at the situation in which he found himself. [Doc. No. 130].

At the conclusion of the hearing, Judge Crews detained the defendant. In a written detention order, Judge Crews determined that the defendant "failed to establish by clear and convincing evidence that he will not flee or that he is not a danger to any other person or to the community." [Doc. No. 131]. Judge Crews noted that the defendant refused to participate in the day's proceedings and that the defendant's conduct was "disruptive and has bordered on obstructionism." Judge Crews continued:

> [The defendant] threatened this Court numerous times in his two appearances before the undersigned, twice tried to "serve" this Court with papers of some sort, and threatened law enforcement during the circumstances leading to his arrest in this matter. He has further clung to his refrain and

4

> belief that he is not subject to the rule of law of the United States of America or to the authority of this Court, and has exhibited a consistent pattern of behavior to this effect when considering his identical conduct in his underlying proceedings, all of which leads this Court to the conclusion that there are no conditions or combination of conditions which would reasonably assure his appearance as required or reasonably assure the safety of another or the community.

[Doc. No. 131].

The defendant's final revocation hearing was scheduled for January 23, 2020. [Doc. No. 132]. The Government arrived at the hearing prepared to present evidence to the Court supporting the violations of supervised release, but the defendant was so disruptive that the hearing was continued. The defendant's counsel, Martha Eskesen, asked to be relieved. This request was granted, and new CJA counsel was appointed. In a minute order following the hearing, the Court noted that:

> If Defendant refuses to communicate or cooperate with counsel, counsel shall prepare for the Supervised Release Violation hearing to the best of his ability. Counsel shall be prepared to proceed as standby counsel at such hearing in the event Defendant continues to be disruptive, as he was during today's hearing, and the Court has to remove him from the hearing due to such disruptiveness.

[Doc. No. 138]. Subsequent to the January 23, 2020 hearing, Kelly Meilstrup was appointed to represent the defendant.

A new hearing was scheduled for April 1, 2020. [Doc. No. 146]. This hearing was subsequently vacated and reset for May 23, 2020. [Doc. No. 148]. The Government expects that, at this hearing, it will present evidence and call a witness in support of the supervised release violation allegations. Should the court determine that the Government has met its burden and established the violations, the Government intends to seek a sentence of incarceration of 11 months, which is at the top of the defendant's Guidelines

5

range. By the time of the May hearing, the defendant will have been in custody for about seven months.

The defendant filed the instant motion on April 9, 2020. [Doc. No. 149]. Judge Arguello referred it to Judge Crews for consideration on April 10, 2020. [Doc. No. 150].

## **LEGAL STANDARD**

With respect to a defendant who has been alleged to have violated the terms of his supervised release, Federal Rule of Criminal Procedure 32.1 states:

> The magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.

Fed. Rule. Crim. Pro. 32.1(a)(6). Section 3143(a)(1) states, in part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . .

Pursuant to 18 U.S.C. § 3142(f)(2), a detention hearing

> may be reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

"The purpose of [§ 3142(f)(2)] is to allow parties to present new information that increases the likelihood a defendant would appear in court or decrease the potential danger a defendant poses to an individual or the community." *United States v. Zamorano*, 19-cr-00531, Doc. No. 35 (D. Colo. April 10, 2020) (Crews, M.J.). If the hearing is reopened, the standard from Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. § 3143(a)(1)

6

still applies, and the defendant must show by clear and convincing evidence that he is neither a risk of flight or danger to the community.  *See United States v. Ross*, 2020 WL 1486055, at *2 (N.D. Okla. March 27, 2020).

Pursuant to 18 U.S.C. § 3145(b):

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

*See also United States v. Norris*, 2019 WL 339900, at *2 (D. Colo Jan. 28, 2019).  District court review of a magistrate judge's order is *de novo*.  *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  However, where, as here, "the only grounds for revocation of the detention order appear to be a recent change in circumstances, . . . . Congress provided a mechanism for review of new evidence that may have a material bearing on the issue of detention" via 18 U.S.C. § 3142(f).  *United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2020).

## **ARGUMENT**

### I.      The Court Should Characterize the Defendant's Motion as a Motion Under 18 U.S.C. § 3142(f)(2)

The defendant styled his Motion as pursuant to 18 U.S.C. § 3145(b), purporting to seek the district court's review of the magistrate judge's detention decision.  The Tenth Circuit has held that the text of § 3145(a)—which is similar to § 3145(b), but addresses the review of orders of release instead of detention—"supports the conclusion that a motion to revoke a magistrate judge's release order should be ruled on directly by a district judge."  *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).  This is because the statute's reference to "a court having original jurisdiction

7

over the offense" must refer to "the district judge assigned to the case." *Id*. (internal citations omitted). Indeed, a magistrate judge *cannot* review a motion for revocation of bond made pursuant to § 3145; it must be reviewed in the "*first instance* by a district court judge in the court of original jurisdiction." *Id.* at 616 (emphasis added). The same logic holds equally true for § 3145(b) as it does for § 3145(a).

The original order of detention in this case was entered by Judge Crews on October 21, 2019—nearly six months ago. It is plain that any attempt by the defendant to characterize the instant motion as pursuant to 18 U.S.C. § 3145(b) is an effort to evade 18 U.S.C. § 3142(f)(2)'s requirement that the movant present evidence of a changed circumstance to reopen the detention hearing. Though the passage of time does not preclude the district court from addressing the instant Motion as an appeal of the magistrate judge's original order, the facts and circumstances of this case, including the immediate referral by the district court to the magistrate judge, coupled with the defendant's argument make 18 U.S.C. § 3142(f)(2) the more appropriate vehicle for the defendant's challenge to his order of detention. *See United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2020).

In *Romero*, the defendant waived his right to a detention hearing on December 28, 2009 before the magistrate judge because he was, at the time, also serving a state sentence. The magistrate judge accepted the waiver, and ordered the defendant detained as a danger to the community based on the offense conduct and his criminal history. *Id.* at *1. The defendant filed a "Motion for Bail" before the district court four months later, on May 1, 2020, in which he stated that his state sentence had been commuted. *Id.* The district court then contemplated whether the defendant's motion should be considered under § 3142(f) or § 3145(b). *Id.*

8

The district court noted that "four months [had] passed since the detention order was issued and in which the only grounds for revocation of the detention order appear to be a recent change of circumstance." *Id.* at 2. The court continued:

> Through 18 U.S.C. § 3142(f), Congress provided a mechanism for review of new evidence that may have a material bearing on the issue of detention. There is no impediment to [the defendant] using this avenue for reconsidering the detention order in this case. . . . It is far less efficient for a district judge to review a magistrate judge's detention order under § 3145(b) when such review is based on new information within the meaning of § 3142(f).

*Id.* Ultimately, the district court declined to review the new evidence, and simply reviewed the magistrate judge's original detention order *de novo*, and denied the motion for bail. *Id.*

Here, Judge Arguello already referred the defendant's Motion to Judge Crews—the magistrate judge who entered the original detention order. Had Judge Arguello wished to review the record—with or without the newly-proffered evidence regarding the pandemic—*de novo* pursuant to § 3145(b), she could have done so. *See United States v. Doby*, 928 F.3d 1199, 1202 (10th Cir. 2019) (holding that § 3145(a) is not subject to time limitations). But Judge Arguello's referral, coupled with § 3142(f)(2)'s clear statutory mechanism to consider new evidence in the detention context, should lead this court to construe the defendant's motion as pursuant to 18 U.S.C. § 3142(f)(2).[2]

## II. The COVID-19 Pandemic is Not a Changed Circumstance Pursuant to 18 U.S.C. § 3142(f)(2)

The only fact asserted in his Motion that could be characterized as information "that was not known to the movant at the time of the hearing," 18 U.S.C. § 3142(f)(2), is

---

[2] Of course, should the defendant which to subsequently appeal the magistrate judge's decision, the review mechanism will still exist pursuant to § 3145(b), so no substantive loss of rights will result from construing the defendant's motion in this way.

the defendant's generalized references to the COVID-19 pandemic. More specifically, in his Motion, the defendant mentions (1) how his age (55 years old) puts him at risk for COVID-19 as an "older adult," (2) largely unspecified health concerns, including the debunked notion that the defendant suffers from "mercury poisoning," and (3) the potential of a COVID-19 outbreak at GEO, where the defendant is currently being detained.

This court has already held that it is "not convinced" that "the COVID-19 pandemic is a material change of circumstances warranting a renewed evaluation of a prior detention order without more." *Zamorano*, 19-cr-00531, Doc. No. 35. This conclusion should hold particularly true in the instant case. First, the CDC classifies "older adults" who are at increased risk of death from COVID-19 as those 65 and older. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited April 13, 2020). The defendant is only 55.

Second, in his Motion, the defendant's counsel assumes with no support that the defendant suffers from unspecified health problems, including "mercury poisoning." There is no suggestion whatsoever that whatever health problems may befall the defendant that GEO is ill-equipped to deal with them. Moreover, with respect to health concerns related to COVID-19 specifically, at least two other U.S. Magistrate Judges in the District of Colorado have already reviewed and rejected release arguments on this basis in cases where the defendants—unlike the instant defendant—faced severe, specific health conditions. In *United States v. Moon*, Magistrate Judge Scott T. Varholak ruled that COVID-19 did not provide a basis for release of an inmate with Stage I tonsillar cancer, holding: "[w]hile the Court is sympathetic to those unique concerns, the Motion fails to identify any changed circumstances that would undermine the Court's earlier

10

conclusion that there were no conditions or combination of conditions that the Court could impose that would insure the safety of the community." *United States v.* Moon, 20-CR-00061-RBJ, Doc No. 19 (D. Colo. March 17, 2020). Similarly, in *United States v. Seltzer*, Magistrate Judge Gordon P. Gallagher ruled that COVID-19 did not provide a basis for temporary release for a 55-year old inmate who is diabetic, explaining that while the motion "argues that the Court should reopen the detention hearing due to the nationwide COVID-19 outbreak and the unique concerns that this outbreak poses to individuals held in pretrial detention—particularly those with age or health concerns that may place them in a higher risk category[,]" the motion failed to identify changed circumstances. *United States v. Seltzer*, 18-CR-00201-MSK and 18-CR-00202-GPG, Doc. No. 157 (D. Colo. March 20, 2020). The same conclusions apply to this defendant's vague and speculative health concerns.

Finally, the defendant refers in his Motion to confirmed cases of COVID-19 among the staff at GEO. According to the U.S. Marshals Service—which contacts every facility where it houses federal detainees for daily updates—as of April 13, 2020, there are no confirmed cases of COVID-19 among the inmates at GEO. Specifically, there are no prisoners that have tested positive for COVID-19 at GEO and no inmates that are symptomatic and in quarantine. They have had no positive cases since tracking began at the very beginning of this pandemic.

There were two employees of GEO/ICE who tested positive for COVID-19 and have been at home since March 13. The ICE side of the facility is completely separate from where the District's federal prisoners are housed. In any event, neither employee had access to or contact with inmates, so those two employees did not pose a risk of exposure for any inmate. According to GEO, there are currently no inmates that are

11

symptomatic at this time and no reports of any ill employees.

GEO is conscientiously working to minimize the risk of a COVID-19 outbreak within the detention facility. According to correspondence between GEO and the U.S. Marshals Service, they are employing the following measures to control the potential spread of COVID-19 through members of the staff at GEO:

- All staff, contractors, and attorneys entering the facility are screened for potential COVID-19 symptoms. A health survey form and temperature check are required. If a high temperature 100.4 or higher is read, or staff are reporting any signs or symptoms, they are sent home. Staff returning to work must coordinate with Human Resources to ensure risk of exposure protocols are followed.

- In all areas possible, staff are following social distancing of at least 6 feet separation between individuals. Roll calls are not held in group settings. Staff are briefed by the supervisor as they clock in for shifts. Weekly Department head meetings have been relocated to the larger training room for social distancing.

- GEO works closely with Tri-County Health Department, which has been a resource on providing the latest information and guidance from the State Health Department and Center for Disease Control. The Facility Administrator is sending phone messages to all staff to improve communication as needed. Informational posters are posted in all areas of the facility.

In order to control the potential spread of COVID-19 amongst detainees, the facility is employing the following procedures:

- All detainees are screened when they get off the transport vehicles for signs of COVID-19.

- New detainees are housed at an annex for 14 days as a COVID-19 exposure precaution.

- Any detainees showing signs or symptoms of COVID-19 will be moved to medical negative pressure rooms for evaluation for strep, flu, and COVID-19, if needed. The State Health Department has quick turnaround on tests (recently 24 hours).

- All detainees in the precautionary cohort receive a medical screening and temperature check twice a day to identify any symptoms.

- Medical staff has adequate personal protective equipment (PPE) on hand at this time.

In order to control the potential spread of COVID-19 through visitation with detainees, social visitation has been suspended and detainees are using tablets and telephones.

In order to comply with direction from the Governor of Colorado's Office on detention facilities, only 10 detainees at a time are allowed access to the dayrooms and recreation yards. During the out of cell rotation, detainees have access to tablets, phones, showers, recreation yards, and microwaves.

Detainee meals are being served in the detainee cells. Detainees on cohort receive meals on disposable trays to limit exposure. High touch areas (*e.g.*, phones, tablets, door knobs, dayroom tables, etc.) are disinfected frequently. Overall sanitation and disinfecting of all areas is occurring more frequently. Inventories of detainee hygiene items is adequate at this time. The facility continues to focus on social distancing for detainees and staff, while limiting groups of individuals to no more than 10, and maintaining the 6-foot spacing directive.

GEO is maintaining open communication with Tri-County Health Department using conference call and email communication to remain abreast of information. Detainee phone calls are being monitored for potential mental health issues or serious detainee concern.

Taken together, these comprehensive measures sharply mitigate the risk of COVID-19 transmission while the defendant is in detention. The presence of COVID-19 should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether a defendant is properly subject to detention while

awaiting sentencing and it does not constitute exceptional reasons why the defendant's detention is not appropriate.

### III. Even Assuming it is a Changed Circumstance, the COVID-19 Pandemic Does not Bear on the Defendant's Risk of Flight and the Danger to the Community

Even assuming the COVID-19 pandemic does constitute a changed circumstance, the defendant does not even attempt to connect the pandemic to 18 U.S.C. § 3143(f)(2)'s requirement that the new information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." And nor could he. Any argument that the COVID-19 pandemic somehow constitutes evidence that the defendant is not a flight risk or a danger to the community rings entirely hollow.

Simply put, nothing has changed since the time of the October 21, 2019 detention hearing. At that hearing, the defendant did not even attempt to meet his burden to establish, by clear and convincing evidence, that he is not a risk of flight or danger to the community. He made no arguments, and presented no evidence. On this basis alone, the court could have detained the defendant under Federal Rule of Criminal Procedure 32.1(a)(6). But the Government did present evidence to the Court. And based on this evidence, there is no question that the defendant was—and still is—a serious risk of flight. He is a sovereign citizen and believes that he is not subject to supervision by the probation department or the jurisdiction of the court. It is not a surprise, then, that he refused to appear on the summons in this case and instead had to be arrested. During every court appearance in this case—including his jury trial—the defendant has been disruptive, rude, and threatening to the court, attorneys, and staff. He refuses to communicate with his court-appointed attorney, but also refuses to participate in the court's proceedings when

14

he is allowed to represent himself.  There is zero chance that, if released on bond, that the defendant would voluntarily appear for his next court appearance.  And there is also no chance that, if released, the defendant would conform to the conditions of his release, which would undoubtedly include compliance with his already-imposed (and already-violated) conditions of supervised release.

In his Motion, the defendant argues that because he was arrested at his home, he is not a risk of flight.  But, the defendant's counsel also acknowledges in the Motion that she has not actually spoken with the defendant or his family, and only "presumes" that he would be permitted to return to the family home in Pueblo.  [Doc. No. 149 ¶ 9].  She also "presumes" that this family home would be amenable to the technology required for GPS monitoring.[3]  If the defendant even has a place to live with his family, given that the defendant's family also apparently subscribes to the sovereign citizen philosophy, it is unlikely that they would consent to the U.S. Probation Department installing equipment at their home.  It is equally unlikely that the defendant would consent to having a U.S. government-owned GPS device affixed to his body.  In any event, if GPS monitoring is a possibility, it is an option that was available at the time that Judge Crews originally detained the defendant, and does not constitute a changed circumstance now.

The defendant is also a danger to the community.  When probation officers served the summons on the defendant on August 30, 2019, he tried to eject them from his property for "trespassing," alluded to his "lifetime" right to bear arms, and threatened to hang them should they return.  Since then, the defendant's family has been aggressive

---

[3] It is also worth noting that the defendant's proposal of consenting to GPS ankle monitoring and/or in-home confinement with supervision is not conducive to effective social distancing, as it subjects employees of the U.S. Probation Office to close contact with the defendant and his family in an environment which is less controlled than the one in which she currently resides.

15

in "serving" papers on the parties—including on the Assistant U.S. Attorney while she was sitting at counsel table—in this case. If the defendant is released on bond, he will surely have to be arrested before his next court appearance. Given the defendant's posture toward law enforcement, execution of an arrest warrant places any arresting officer in danger.

The defendant does not identify how the COVID-19 pandemic impacts these factors, or in any way mitigates the risk of flight or danger to the community posed by his release. While COVID-19 has disrupted normal functioning at all levels of society, it simply does not bear on the considerations of the Bail Reform Act with regard to whether the defendant is likely to flee or pose a danger to the safety of any other person or the community.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's Motion and order that the defendant remain detained pending his hearing in this matter.

Respectfully submitted this 14th day of April, 2020.

JASON R. DUNN
United States Attorney

*s/ Andrea Surratt*
Andrea Surratt
Assistant United States Attorney
United States Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: Andrea.Surratt@usdoj.gov

16