FILED
United States Court of Appeals
Tenth Circuit

April 5, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DESTRY WILLIAMS,

    Defendant - Appellant.

No. 20-1266
(D.C. No. 1:12-CR-00140-CMA-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**\*

_____

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

_____

Michael Destry Williams challenges as substantively unreasonable the two years' imprisonment imposed for his violations of supervision. For the reasons below, we affirm the district court.

## BACKGROUND

In 2014, after a jury found Williams guilty of ten counts of tax-evasion and fraud offenses, the district court sentenced him to seventy-one months' imprisonment and five years' supervised release. Williams began the five-years' supervision on August 22, 2018 and was set to end it on August 21, 2023. But he lasted under supervision only a year. On

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

August 27, 2019, a probation officer filed a Petition for Summons on Person Under Supervision, alleging three violations of Williams's supervision.

All three violations allegedly stemmed from Williams's asserted belief that he is an American National and is not subject to the same legal system as United States citizens. First, Williams had allegedly stopped submitting monthly reports to probation. Probation alleged that this noncompliance began after April 2019, when Williams had sent a "'Notice and Demand to Cease and Desist' letter, in which [he had] indicate[d] that he is recognized as an 'American National and not a US citizen'" and had asked to "be removed from the docket and registry" and for probation to "'Cease and Desist all trespasses' upon him." R. vol. I at 47. Second, Williams had allegedly refused to pay his monetary penalties and restitution. Allegedly, after his release from custody, Williams had not complied with probation's request that he complete a payment plan and a financial statement, and he had been writing this on his monthly reports, instead of making payments: "NO Lawful Bill Under Article 1 section 10 has been served upon me the Sole foreign Beneficiary." *Id.* at 48 (internal quotation marks omitted). Third, probation alleged that Williams had not obtained a substance-abuse and mental-health assessment, despite having been ordered to do so. He allegedly had reported as directed to a treatment agency but once there, had insisted on signing all required paperwork by adding "under threat, duress, coercion." *Id.* Because of this, the provider would not treat him. So the probation officer had given Williams sixty days to obtain an assessment elsewhere, but Williams did not do so.

After reviewing these allegations, the district court summoned Williams to appear in court on September 13, 2019. When probation officers attempted to serve this summons at Williams's residence, he refused to accept it, claiming that it was not issued by the correct court. Again, he maintained that he was an American National, not a United States citizen. Then, because Williams was displeased that the officers were there, he announced that as an American National, he had a lifetime right to bear arms and that the officers were trespassing. If they returned, "he would see to it that [they] would be charged with treason and would be publicly hung." R. vol. IV at 58.

After Williams failed to appear in court as directed, the court issued a warrant, leading to his arrest on October 15, 2019. At the initial appearance before Magistrate Judge S. Kato Crews, Williams repeated his claims about being an American National and about the court lacking "lawful jurisdiction," R. vol. V at 57. He repeatedly called Magistrate Judge Crews, "Trustee Crews," *see, e.g.*, *id.* at 57, 60; accused Magistrate Judge Crews of violating his rights, "personally, commercially and criminally," *id.* at 59, and of "being rude and committing liability and fraud" on him, *id.* at 66; and told Magistrate Judge Crews to contact his consulate.

These arguments gave Magistrate Judge Crews pause regarding Williams's competency. So at the beginning of the October 21 preliminary hearing, he explained why he would proceed on the assumption that Williams was competent, reasoning that Williams was exhibiting the same behavior that he had when the district court had found him competent to stand trial. Magistrate Judge Crews quoted in part this from the earlier findings:

3

> Although this Court was concerned about Mr. Williams'[s] bizarre filings and refusal to accept mail from the court, the Government and his own attorney, Dr. Fukutaki's conclusion was that defendant's disinclination to adhere to the Court's instructions and to courtroom protocol [w]as the result of his belief that he is not subject to the rule of law of the United States of America or to the authority of this Court, rather than to a mental illness or cognitive impairment.

*Id.* at 71.

Through the course of this hearing, Williams demonstrated the same behavior as before, stating at one point that "at no time" would he "appear to participate in [the court's] corporate rules" or "corporate procedures." *Id.* at 73–74. Although Magistrate Judge Crews attempted to give a *Faretta*[1] advisement after Williams refused the appointment of counsel, Williams's constant interruptions forced the magistrate judge to reference the underlying record on this issue, from which he concluded that the district court had previously given this advisement. The magistrate judge did appoint standby counsel. Given Williams's behavior and the events preceding his appearance, the magistrate judge authorized detention, finding Williams a flight risk because of his belief that he was not subject to the proceedings in court and a danger to the community because of his threats to law officers.

---

[1] We refer to *Faretta v. California*, 422 U.S. 806 (1975). A *Faretta* hearing is "the tried-and-true method for establishing that a waiver [of counsel] was knowing and intelligent" and involves "a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." *United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015) (citation and internal quotation marks omitted).

At the January 23, 2020 revocation hearing, Williams made similar statements as before but this time, he was so disruptive that the district court had to continue the hearing. Before adjournment, Williams's original standby counsel withdrew, after explaining that she was unable to effectively represent him.

On July 9, 2020, the court proceeded with the revocation hearing. Now, COVID precautions were in place and the court had Williams removed after he refused both to wear a face mask and as before, to answer questions about his waiver of counsel. After finding that Williams had not waived his right to counsel, the court asked that the replacement standby counsel step in for him. At this point, the court observed that Williams had refused to speak with this attorney and that both Williams and his family had told her that he was an American National over whom this court lacked jurisdiction.

After the court found the alleged violations of supervision established by a preponderance of the evidence, the court turned to the question of sentencing. The court deemed Williams's violations to be Grade C, his criminal history category to be III, and the resulting advisory U.S. Sentencing Guidelines range to be five to eleven months. The court also concluded that 18 U.S.C. § 3583(e)(3) permitted imposing up to three additional years' imprisonment plus additional supervised release and that although under the sentencing guidelines, violations of supervision are to be sentenced as breaches of trust, courts may consider the seriousness of the violations and the violator's criminal history when sentencing.

For the term of imprisonment, Williams sought time served, which would have been approximately eight-and-a-half months, and the United States sought eleven

months. The parties agreed that because Williams would not comply with supervision, none should be imposed. Although the United States was "loathe to reward" Williams's behavior and complained that "that is sort of what it feels like to say that we don't want to impose additional supervised release," *id.* at 38–39, it explained its position like this:

> [I]t is my view, and I assume it is also the view of the probation department, that supervised release is a time-consuming resource that should be reserved for releasees who actually want to benefit from the services the probation officers provide.
>
> And, here, it is clear from [the probation officer's] testimony that he went above and beyond, and gave Mr. Williams chance and chance to comply with the terms of this Court's judgment, and he just refused.

*Id.* at 39.

After Williams reentered the courtroom and repeated, again, his arguments about being an American National, the court issued its sentence. Although the court agreed that it "ma[de] no sense to reimpose a sentence of supervised release," *id.* at 45, it found eleven months' imprisonment insufficient, explaining this:

> I refuse to reward him for flaunting the law. And an order sanctioning him only to 11 months of imprisonment and then letting him walk free is not a sufficient sentence.
>
> I have seen so many defendants come through this courtroom on supervised release violation petitions who have tried to comply with the conditions but they may be drug addicts or they may be mentally ill, and they find their way back to me on violations, and they have been sentenced to higher sentences.
>
> Someone like Mr. Williams, who reaps the benefits and privileges of living here in the United States should not be allowed to flaunt the law and ignore the law in the way that he has. To give him 11 months would be a slap on the wrist, and then he is allowed to go his merry way.

6

*Id.* at 46. The court ordered a sentence of 24 months' imprisonment, with credit for time served. On appeal, Williams challenges this sentence. We review, exercising jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Williams challenges his sentence as substantively unreasonable. "We review this issue for abuse of discretion." *United States v. Peña*, 963 F.3d 1016, 1024 (10th Cir. 2020) (citation omitted), *cert. denied*, No. 20-6437, 2021 WL 78456 (U.S. Jan. 11, 2021). "Applying this standard, we give substantial deference to the district court and will only overturn a sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (citation and internal quotation marks omitted). "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of [a number of] the factors set forth in 18 U.S.C. § 3553(a)."[2] *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007) (citation omitted); *see United States v. McBride*, 633 F.3d 1229, 1231 (10th Cir. 2011) ("Before deciding whether to revoke a

---

[2] These factors include:

> [T]he nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*United States v. Cordova*, 461 F.3d 1184, 1188–89 (10th Cir. 2006) (alteration in original) (quoting *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 n.3 (10th Cir. 2005)).

term of supervised release and determining the sentence imposed after revocation, the district court must consider the factors set out in 18 U.S.C. §[§] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." (citing 18 U.S.C. § 3583(e)) (footnote omitted)).

We have reviewed the district court's opinion and find no abuse of discretion. When Williams was arrested, he had close to four years remaining on his initial term of supervision. But because of his non-compliance, he is not being asked to serve any more supervision after his current term of custody. The district court was reasonably concerned that this would reward his bad behavior and did not abuse its discretion in imposing two years', rather than eleven months', imprisonment. Williams argues that the sentence is more than double the top of the guidelines range even though his violations were only technical and the world is in the middle of a pandemic. But even so, this doesn't show an abuse of discretion. *Cf. United States v. Bullcoming*, 579 F.3d 1200, 1206–07 (10th Cir. 2009) ("Mr. Bullcoming also contends that the district court abused its discretion in varying upward to impose a sentence of 36 months' imprisonment—double that of the top of the applicable guidelines range. . . . We have reviewed the district court's explanation for the sentence it imposed and discern no abuse of discretion.").

## CONCLUSION

For the foregoing reasons, we affirm the district court.

                                              Entered for the Court

                                              Gregory A. Phillips
                                              Circuit Judge