**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2021**

**Jane K. Castro**
**Chief Deputy Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DESTRY WILLIAMS,

    Defendant - Appellant.

No. 20-1266
(D.C. No. 1:12-CR-00140-CMA-1)
(D. Colo.)

_____

**ORDER**

_____

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

_____

The court, on its own motion, publishes the Order and Judgment filed on April 5, 2021. The published opinion, filed *nunc pro tunc* to the original filing date, is attached.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

April 5, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DESTRY WILLIAMS,

    Defendant - Appellant.

No. 20-1266

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:12-CR-00140-CMA-1)**

_____

Submitted on the briefs:[*]

Ryan Thomas Truskoski of Ryan Thomas Truskoski, P.A., Las Cruces, New Mexico, for Defendant-Appellant.

Jason R. Dunn, United States Attorney, and Michael C. Johnson, Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

_____

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Michael Destry Williams challenges as substantively unreasonable the two years' imprisonment imposed for his violations of supervision. For the reasons below, we affirm.

## BACKGROUND

In 2014, after a jury found Williams guilty of ten counts of tax-evasion and fraud offenses, the district judge sentenced him to seventy-one months' imprisonment and five years' supervised release. Williams began the five-years' supervision on August 22, 2018, and was set to end it on August 21, 2023. But he lasted under supervision only a year. On August 27, 2019, a probation officer filed a Petition for Summons on Person Under Supervision, alleging three violations of Williams's supervision.

All three violations allegedly stemmed from Williams's asserted belief that he is an American National and is not subject to the same legal system as United States citizens. First, probation alleged that Williams had stopped submitting monthly reports to probation. In April 2019, Williams had sent a "'Notice and Demand to Cease and Desist' letter, in which [he had] indicate[d] that he is recognized as an 'American National and not a US citizen'" and had asked to "be removed from the docket and registry" and for probation to "'Cease and Desist all trespasses' upon him." R. vol. I at 47. Second, probation alleged that Williams had refused to pay his monetary penalties and restitution. After his release from custody, Williams had not complied with probation's request that he complete a payment plan and a financial statement and instead of making monthly payments, sent probation this note: "NO Lawful Bill Under Article 1 section 10 has been served upon me the Sole foreign Beneficiary." *Id.* at 48 (internal quotation marks

omitted). Third, probation alleged that Williams had not obtained a substance-abuse and mental-health assessment, despite having been ordered to do so. As directed, he reported to a treatment agency but once there, he insisted on signing all required paperwork by adding "under threat, duress, coercion." *Id.* Because of this, the provider would not treat him. So the probation officer gave Williams sixty days to obtain an assessment elsewhere, but Williams did not do so.

After reviewing these allegations, the district judge summoned Williams to appear in court on September 13, 2019. When probation officers attempted to serve this summons at Williams's residence, he refused to accept it, claiming that it was not issued by the correct court. Again, he maintained that he was an American National, not a United States citizen. Displeased by the officers' presence, he announced that his status as an American National gave him a lifetime right to bear arms and that the officers were trespassing. He warned of consequences if they returned: "he would see to it that [they] would be charged with treason and would be publicly hung." R. vol. IV at 58.

After Williams failed to appear in court as directed, the court issued a warrant, leading to his arrest on October 15, 2019. At the initial appearance before the magistrate judge, Williams again claimed to be an American National, meaning the court had no "lawful jurisdiction." R. vol. V at 57. He repeatedly called the magistrate judge, "Trustee," *e.g.*, *id.* at 57, 60; accused the magistrate judge of violating his rights, "personally, commercially and criminally," *id.* at 59, and of "being rude and committing liability and fraud" on him, *id.* at 66; and told the magistrate judge to contact Williams's consulate.

These statements raised a question in the magistrate judge's mind whether Williams might be considered incompetent. But at the beginning of the October 21 preliminary hearing, the magistrate judge explained why he assumed that Williams was competent, reasoning that Williams was behaving the same as he had when the district judge had found him competent to stand trial. The magistrate judge explained that the district judge had previously found as follows:

> Although this Court was concerned about Mr. Williams'[s] bizarre filings and refusal to accept mail from the court, the Government and his own attorney, Dr. Fukutaki's conclusion was that defendant's disinclination to adhere to the Court's instructions and to courtroom protocol [w]as the result of his belief that he is not subject to the rule of law of the United States of America or to the authority of this Court, rather than to a mental illness or cognitive impairment.

*Id.* at 71.

Through the course of the preliminary hearing, Williams continued to behave as before, stating at one point that "at no time" would he "appear to participate in [the court's] corporate rules" or "corporate procedures." *Id.* at 73–74. Though the magistrate judge attempted to give a *Faretta*[1] advisement after Williams refused the appointment of counsel, Williams's constant interruptions forced him to reference the underlying record on this issue, noting that the district judge had previously given this advisement. The

---

[1] We refer to *Faretta v. California*, 422 U.S. 806 (1975). A *Faretta* hearing is "the tried-and-true method for establishing that a waiver [of counsel] was knowing and intelligent" and involves "a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." *United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015) (citation and internal quotation marks omitted).

magistrate judge did appoint standby counsel. Given Williams's behavior and the events preceding his appearance, the magistrate judge authorized detention, finding Williams a flight risk because of his belief that he was not subject to the proceedings in court, as well as a danger to the community because of his threats to law-enforcement officers.

At the January 23, 2020 revocation hearing before the district judge, Williams made similar statements as before but this time, he was so disruptive that the district judge had to continue the hearing. Before adjournment, Williams's original standby counsel withdrew, explaining that she was unable to effectively represent him.

On July 9, 2020, the district judge proceeded with the revocation hearing. Now, COVID precautions were in place, and the district judge had Williams removed after he refused to wear a face mask and to answer questions about his waiver of counsel. After finding that Williams had not waived his right to counsel, the district judge asked that the replacement standby counsel step in for him. At this point, the district judge observed that Williams had refused to speak with this attorney and that both Williams and his family had repeated the refrain that Williams was an American National over whom this court lacked jurisdiction.

After the district judge found the alleged violations of supervision by a preponderance of the evidence, the district judge turned to sentencing. The district judge deemed Williams's violations to be Grade C, his criminal-history category to be III, and his advisory U.S. Sentencing Guidelines range to be five to eleven months. The district judge also noted that 18 U.S.C. § 3583(e)(3) permitted imposing up to three additional

years' imprisonment plus additional supervised release and that courts may consider the seriousness of the violations and the violator's criminal history when sentencing.

For the term of imprisonment, Williams sought time served, so about eight-and-a-half months, and the United States sought eleven months. The parties agreed that continuing Williams on supervised release would be fruitless, so none should be imposed. Though the United States was "loathe to reward" Williams's bad behavior, *id.* at 38–39, it explained its position as follows:

> [I]t is my view, and I assume it is also the view of the probation department, that supervised release is a time-consuming resource that should be reserved for releasees who actually want to benefit from the services the probation officers provide.
>
> And, here, it is clear from [the probation officer's] testimony that he went above and beyond, and gave Mr. Williams chance and chance to comply with the terms of this Court's judgment, and he just refused.

*Id.* at 39.

After Williams reentered the courtroom and repeated his arguments about being an American National, the district judge issued the sentence. Though the court agreed that it "ma[de] no sense to reimpose a sentence of supervised release," *id.* at 45, it found eleven months' imprisonment insufficient, explaining as follows:

> I refuse to reward him for flaunting [sic] the law. And an order sanctioning him only to 11 months of imprisonment and then letting him walk free is not a sufficient sentence.
>
> I have seen so many defendants come through this courtroom on supervised release violation petitions who have tried to comply with the conditions but they may be drug addicts or they may be mentally ill, and they find their way back to me on violations, and they have been sentenced to higher sentences.

> Someone like Mr. Williams, who reaps the benefits and privileges of living here in the United States should not be allowed to flaunt [sic] the law and ignore the law in the way that he has. To give him 11 months would be a slap on the wrist, and then he is allowed to go his merry way.

*Id.* at 46. The court ordered a sentence of 24 months' imprisonment, with credit for time served. On appeal, Williams challenges this sentence. We review, exercising jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Williams challenges his sentence as substantively unreasonable. "We review this issue for abuse of discretion." *United States v. Peña*, 963 F.3d 1016, 1024 (10th Cir. 2020) (citation omitted), *cert. denied*, No. 20-6437, 2021 WL 78456 (U.S. Jan. 11, 2021). "Applying this standard, we give substantial deference to the district court and will only overturn a sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (citation and internal quotation marks omitted). "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of [a number of] the factors set forth in 18 U.S.C. § 3553(a)."[2] *United States v.*

---

[2] These factors include:

> [T]he nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*United States v. Cordova*, 461 F.3d 1184, 1188–89 (10th Cir. 2006) (alteration in original) (quoting *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 n.3 (10th Cir. 2005)).

*Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007) (citation omitted); *see United States v. McBride*, 633 F.3d 1229, 1231 (10th Cir. 2011) ("Before deciding whether to revoke a term of supervised release and determining the sentence imposed after revocation, the district court must consider the factors set out in 18 U.S.C. §[§] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." (citing 18 U.S.C. § 3583(e)) (footnote omitted)).

We have reviewed the sentencing transcript and find no abuse of discretion. When Williams was arrested, he had about four years remaining on his initial term of supervision. But his non-compliance has resulted in his being excused from further supervised release after his current term of custody. The district judge was reasonably concerned that this result would reward his bad behavior, and we hold that the court acted within its discretion in imposing two years' imprisonment. Williams complains that this sentence more than doubles the top of his advisory-guidelines range, that his violations were technical, and that the world is in the middle of a pandemic. Even so, the court did not abuse its discretion. *Cf. United States v. Bullcoming*, 579 F.3d 1200, 1206–07 (10th Cir. 2009) ("Mr. Bullcoming also contends that the district court abused its discretion in varying upward to impose a sentence of 36 months' imprisonment—double that of the top of the applicable guidelines range. . . . We have reviewed the district court's explanation for the sentence it imposed and discern no abuse of discretion.").

## CONCLUSION

For the foregoing reasons, we affirm.